The next case today is United States v. Tony Leonard, appeal number 19-1392. Attorney Hennessey, please introduce yourself for the record and proceed with your argument. Good morning and may it please the Court, Attorney Robert Hennessey on behalf of Mr. Leonard. With the Court's permission, I'd like to reserve one minute for rebuttal at the conclusion of the argument. Yes, you can, Mr. Hennessey. Okay, we are here this morning asking that the Court vacate Mr. Leonard's convictions or his conviction and remand his case for an evidentiary hearing under Franks. The sole issue in this appeal is whether Mr. Leonard should have been provided such an evidentiary hearing to test the veracity of a warrant affidavit that contained a number of undisputed omissions. The information that was omitted was uncontested as a matter of fact. The information was known to the police and the information was accepted as true by the trial judge below. Both of these omissions had to do with the sole allegedly controlled purchase of narcotics that is described in the search warrant affidavit. One of them concerned the omission of the fact that although the warrant affidavit emphasizes that the C.I. at issue was equipped with electronic recording and monitoring device, that police were not actually able either to monitor or record any of the transaction due to background noise. The second omission and perhaps the more troubling omission is the fact that, and the undisputed fact that the C.I. who was conducting this controlled purchase met up with someone else while in the vicinity of Mr. Leonard's home, that she left with them, with this other unidentified unnamed person, and that she traveled elsewhere prior to going back to the pre-established meeting place to meet with her police handlers. It is our position that these omissions warrant certainly an evidentiary hearing because had the controlled purchase of cocaine been properly done, it would have been not only the most powerful evidence provided the magistrate of a connection between the target residence and illegality, but it's also the sole meaningful evidence to corroborate the confidential informant allegations that make up the balance of the search warrant affidavit. What do you do? Suppose we put all that in. So as you point out, it's undercut the force of the controlled buy. It's not as strong evidence as it otherwise would have been. But you have three C.I.s who are all describing not a typical situation of a person having place in a building and then a separate room used for a separate apartment for drug transactions. Doesn't that become mutually corroborating as among the three C.I.s? It's hard to think they could have made that up, each one of them. I see your point in the unlikely that they would have each made up similar allegations on that level, but when you look at the detail actually provided about the interior of this building and you look at the facts surrounding the reliability and credibility of these C.I.s, I think it very easily could have been they were repeating rumors within a community. I mean, because they do describe two apartments, one that is an apartment and one that is, I think they call it a trap or a trap space in which the illegality is alleged to be taking place. But when you look at who that's coming from, you have, well, first of all, the affidavit is very unclear as to who is who. It refers to everyone as C.I. So picking apart that and just assuming that each, as we set out in our brief, C.1, C.2, and C.3, C.1, the affidavit sets out is an individual who had current drug charges, was involved in drugs more generally, and had passed convictions specifically for false public alarm, which is giving false information and making false allegations to the police. The only indicia of reliability for C.I.1 is the affiant's conclusion or assertion that I have deemed him credible, which this court has determined is not a particularly powerful basis for finding credibility. Am I wrong in reading the record to say I thought it was I have deemed him credible in past investigations? I have, I would double check. But what is clear is that if there was no allegation that these are investigations that led to any arrests, let alone convictions, which I think is usually the standard way you would establish credibility in that context. But moving on to C.I.2, C.I.2, there is more information about C.I.2. They actually say that information from this informant has led to an arrest. But they provide no detail about, they make assertions about the interior of the building, but there's no allegation and no allegation from which a judge could infer that he had ever been in that building. And that's what goes to my point in terms of the question asked, is this mutually corroborating information of sufficient detail that these untested C.I.s could corroborate one another? I would suggest that that fact alone, that this person who apparently has never been in the building, had the same information. That this could just be information circulating within the community, not based on personal observation, but just general knowledge of what was happening. So the Franks standard is a remedy for intentional or reckless misleading, not careless misleading. How do you get us to intentional or reckless as opposed to careless? Well, my position is that when these omissions are considered, not just considered in the first instance, but considered in context, that as I mentioned earlier, the omission of the fact that an electronic recording slash monitoring device, which is featured in the affidavit, was not working or was not producing anything of value is more than careless. I think that when you're making the first allegation, it would be clear to a reasonable person that the second amount of information is pertinent and should have been presented to the magistrate. And the same is with the omission of the facts that this C.I. was not alone, met up with someone else while they were there, were not apparently followed by the police after they left the target residence, went to some other place and dropped someone off. All of this, we have no evidence as to what happened. I think that you'd have to be more than careless to think that that information is not pertinent to showing a probable cause, which is being based in large part on that one controlled purchase. So I would say that the court can infer at least recklessness from those facts. That would be our position. And lastly. So I think just just to mention in brief now what what our principal argument here is not that the judge erred in not suppressing this evidence at this juncture. The argument is that the judge erred in not allowing an evidentiary hearing in which to test these allegations. Now, some of the case law, as I read it, can sometimes be a little confusing and sort of conflate those ideas. But clearly, the standard under Frank's for an evidentiary hearing is lower than the preponderance of the evidence required for for suppression under Frank's. And our position is that that standard was amply met in this case. This is not a case in which there are just sort of unsupported speculative allegations by a defendant as to facts that were out there. These are all established within the record, within the discovery that was presented by the government, including the recording that shows that shows no no monitoring was possible during the course of this transaction. And also later on in the same recording, you can almost hear I mean, you can hear and it's uncontested that this CI went elsewhere before going back to meet with the police. So if there are any no other further questions, I would just wait and engage my rebuttal argument when that time comes. Thank you, Mr. Hennessy. Thank you. May I proceed, Your Honor? Yes, Miss Lopez. Why don't you go ahead and proceed? Thank you. May it please the court. Julia Lopez on behalf of the United States. It is our position that the district court was correct to deny an evidentiary hearing under the Frank standard in this case. In order to obtain Frank's hearing, a defendant has to make a substantial preliminary showing on both prongs of the Frank's test. That is both that the omissions were intentional or reckless and that their addition to the affidavit would have initiated probable cause. The district court took the, I would say, the most straightforward route to denial, which is the route I would suggest this court take as well, and simply consider a reformed affidavit, add in the two omitted facts, and it's apparent that there was still probable cause to search both of the defendant's apartments in this case. This affidavit is based on mutually corroborating information from three different confidential informants, as well as a controlled by that further corroborated information the confidential informants had provided. When you say, when you say a controlled by, I thought, is it the affidavit did claim was controlled by, but didn't it turn out it wasn't a controlled by? It wasn't controlled in a very fundamental way. I agree, Your Honor, that it was not perfectly controlled, although they did still follow some of the protocol for a controlled by. For example, they followed the CI to the apartment where the defendant resided, and then the affidavit suggests followed the CI away from the apartment back to the meeting place. What's missing is that the CI apparently gave another person a ride and dropped that person off on the way to the meeting place. But in our view, excuse me, Your Honor, is there a question? Well, that's like saying, I mean, that's the heart of the controlled by. It was totally uncontrolled because it met with another person who could have furnished the cash and taken the drugs. Well, Your Honor, I would submit that that's true in all of the cases where this court has found that a nonetheless, quote unquote, controlled by was sufficient to establish probable cause. We cite in our brief Garcia, Janow, and I may get this name wrong, but Kuntzivan. And in all three of those cases, they watched the confidential informant go into the target building. But in every case, those were multi-unit apartment buildings. So there's actually no information beyond that, which the CI provided, about what happened inside of those buildings. So in each of those cases, there was a possibility, as the court acknowledged, that the CI could have gone to a different apartment, secreted the drugs inside the building himself, and then come out with them. But that did not eliminate the probability that the target was the source of the drugs. And it's the same here. We have to remember that the CI was taken to the target residence, the place where three informants had said Mr. Leonard was dealing both crack and cocaine, that the CI left with cocaine consistent with the information that had been provided by sources. And the CI, importantly, also told the agents that the cocaine came from Mr. Leonard. And I would point out that although the recording and monitoring device we found out after the fact didn't capture much usable information, this was a CI who understood that he or she was being followed by agents and recorded or monitored. So I would suggest that that substantially reduces the likelihood that the CI is going to lie to the police about the source of the cocaine. Again, we're dealing with probabilities here and a probable cause standard where we have not a perfect controlled buy, but nonetheless a purchase of cocaine from the defendant at his building, in addition to information from three different informants, which was largely consistent, we would submit that that was sufficient for probable cause. If I could just address the information from those three informants. The appellant has suggested that none of them were reliable and so that information was not sufficient. What we would submit is that when you have three CIs, each of whom provide largely consistent information, that's getting you a long way towards, if not all the way towards probable cause. The court doesn't need to decide in this case whether the CI information was sufficient because we do have the purchase of cocaine. But what we have here are very detailed information, firsthand information. Two of the CIs had actually seen the defendant personally in possession of large amounts of crack and in one instance cocaine. Two of the CIs had seen him in possession of a firearm. I believe two of them mentioned that he had video surveillance in his apartment, which is a somewhat unusual fact and an important detail here. And all three of them mentioned that he was utilizing two apartments, which I would suggest is also unusual behavior. So when you put that information together... Can I just ask you, is it significant that... What is the significance of... I think all three, if I'm wrong, correct me, all three have also features in their past that might lead one to doubt their credibility. That's correct. Is it important to the government's case that there be any information in the warrant application beyond the details that track one another that would suggest why they might be credible? It's a totality of the circumstances test, Your Honor. Is that a piece of the totality that matters? Or if we thought there was nothing in there other than the detailed accounts themselves to suggest the reliability of the confidential informant and then that has to be weighed in light of the features in their past that might lead one to doubt their credibility. Is that itself enough to deem it all credible? Or is it important that there are statements like he was credible in past investigations? Because in your brief, I think you did emphasize that, or at least relied in part on that point. So I'm curious to see how that is to the case. I don't think it's dispositive, but I think it's helpful. I do think that given the nature of the information here, that it was consistent amongst three different individuals and then the purchase of cocaine from Mr. Leonard, that would probably suffice. But we do have more than that. And you had asked, Your Honor, about the past reliability of the person that we've all been calling CI1. What we have on page 21 of the record of pendants is the affidavit says, this source has been proven reliable by providing me with information that I have deemed credible from prior investigations. Just on that point, do we have case law that suggests that statement alone suffices to distinguish the representation of the credibility of the CI relative to simply I deem the CI's representations to be credible, which we've suggested isn't worth very much? I don't know that that exact formulation that is used in this affidavit has been discussed by the court. But what the court has said generally is that reference to past successful provision of information does bear on the credibility analysis. And that's that word successful that just gives me some pause about treating this as enough, because there's no representation there about it having been successful. It's just a statement that it was deemed credible in past investigations, not that it led to anything or had any positive results. Well, I would submit, Your Honor, that not every investigation is going to lead to arrest or seizure of evidence. But that doesn't mean that the informant hasn't provided the police officer with information that the officer then determined was credible. And so what we have is a representation beyond just he's credible, but a reason for why the officer thinks he's credible, which is that information he has provided in prior investigations has panned out, essentially, even if it didn't lead to any successful enforcement operations. And then with CI2, Your Honor, that they specifically said CI2 had provided information in the past that had led to arrest. So we have even further information about that CI. CI3 is a new defendant. They don't give anything about that CI's background. But again, what the court has repeatedly instructed is that when we are looking at the reliability of informants of source information, we're not to view each of these factors in isolation, but rather to look at it in a totality. We're not talking about one or even two sources here, but three sources providing consistent information. I would submit, given the firsthand nature of the information, these are not rumors, as the appellant has suggested, but, in fact, individuals who saw the defendant in possession of large quantities of drugs and indicated to the police that they could, in fact, go ahead and buy drugs from the defendant, which one of the CIs then did. And so under those circumstances, we would submit that there absolutely was probable cause, even when the affidavit is reformed. If I could briefly just address the nexus argument that the appellant makes in his brief, the nexus to Apartment 3, it is our view that this was not preserved. The argument below seems to have been generally that there was no probable cause, once you reform the affidavit, to think that Mr. Leonard was committing a drug-trafficking offense. When this court talks about probable cause, it often talks about the commission element and the nexus element. The district court was never presented with what we view as a slightly different argument, that even if you reform the affidavit and there might be probable cause that Mr. Leonard was trafficking drugs, there's still no nexus to his third-floor apartment, his residence. So we don't view that as a preserved argument. We think it's forfeited and plain-error review should apply. But in any event, we do believe that the affidavit does set forth sufficient nexus to his apartment, Apartment 3, as well as Apartment 2. And if I could just briefly outline five facts that we think create that nexus. First is the proximity between the defendant's so-called trap house or party spot and his residence. They're one-floor apart, so it's reasonable to infer that he's going back and forth between the two locations. Second, none of the CIs had information about where he stored his drug proceeds. He had surveillance equipment throughout the building. He carried a gun on his person, and he was an experienced drug trafficker. So under all those circumstances, we would submit that there was a nexus to Apartment 3, as well as Apartment 2. Thank you. Thank you, Ms. Lopez. Thank you. Attorney Lopez should mute her device at this time. And, Attorney Hennessey, please go ahead. You have one minute of rebuttal, and please introduce yourself on the record again. Hello again. Robert Hennessey on behalf of the appellant, Tony Leonard. Just a few quick points in response to the government's argument. In terms of the reliance on Janow and those cases in terms of, you know, cases in which the police have followed someone to a multi-unit apartment and have not been able to conclusively monitor what was happening in there, that is not what happened in this case. Those cases say, like, well, you know, there's a purely speculative argument that someone could have been in some other room and they could have met with them instead. What we're dealing with is an established other person who traveled with the CI to a completely different place before meeting with police. So I think that those cases do not support that argument here. In terms of the CI knowing that they were being monitored because they had been affixed with this unit, the reason that that monitoring couldn't occur was because of the incredibly loud music that the CI was playing in the car. So I don't think the fact that he or she knew that they were being monitored helps the situation, given that the CI themselves created the circumstance that made monitoring impossible in this case. What about the music at the buy itself? My understanding is that they exited one car and got into another car, so that was music being played by someone else. And then the music was loud again. So there was consistently loud music unless people got out of and into other cars, is what I gather from listening to the recording itself. In terms of what CIs won and— Time has expired. Okay, I'll rest on my brief beyond that. Thank you for your time. Thank you, Mr. Hennessey. Thank you. With this time, that concludes the argument in this case. Attorney Hennessey and Attorney López, you may disconnect from the hearing.